## CAHN v. WESTERN UNION TEL. CO.

*(Circuit Court of Appeals, Fifth Circuit.   December 7, 1891.)*

TELEGRAPH COMPANIES—NON-DELIVERY OF MESSAGE—MEASURE OF DAMAGES.

Plaintiff, anticipating a heavy decline in the market price of certain corporate stock, and desiring to speculate in the same by selling on the exchange before the decline began, and thereafter purchasing at a lower figure, delivered to defendant telegraph company, in Columbus, Miss., a message to his brokers in New York city to sell a certain number of shares.   The message was not delivered to the brokers until eight days later, during which time the stock had dropped from $73 to $55 per share.   Plaintiff in fact had no stock to sell, but kept with his brokers securities, on the strength of which they would have sold the stock on exchange, and bought again on plaintiff's order.   *Held,* in an action against the telegraph company to recover the difference in price between the stock at the time the message should have been delivered, and the time it actually was delivered, that the damages were too remote, uncertain, and speculative, and there could be no recovery therefor.   46 Fed. Rep. 40, affirmed.

Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Mississippi.

Action by E. Cahn against the Western Union Telegraph Company to recover damages caused by delay in delivering a telegraph message. Judgment directed for plaintiff for nominal damages. Plaintiff brings error. Affirmed.

*E. H. Bristow,* for plaintiff in error.

*T. L. Bayne, Geo. Denegre,* and *Y. L. Bayne, Jr.,* for defendant in error.

Before PARDEE, Circuit Judge, and LOCKE and BRUCE, District Judges.

BRUCE, J. This is a suit brought in the court below by the plaintiff, who is appellant here, against the defendant telegraph company, appellee, for damages for an alleged breach of contract and duty on the part of defendant in failing to deliver in due time a telegraphic message from plaintiff to his brokers, Latham, Alexander & Co., in New York city. The message was in these words:

"COLUMBUS, MISS., Feb. 20th, 1890.

*"To Messrs. Latham, Alexander & Co., New York, N. Y.:* Sell 200 Tennessee Coal and Iron. [Signed] E. CAHN."

Plaintiff avers in his complaint—

"That said message was delivered to and received by the agent or operator of the defendant at its office in Columbus, Miss., on or about 7 o'clock P. M., on Thursday, the 20th day of February, 1890; * * * that, anticipating an early, rapid, and heavy decline in the value and price of the stock of the Tennessee Coal & Iron Company, and desiring to sell 200 shares of said stock before the decline began, with a view of purchasing later on the same number of shares when the price and value thereof had reached a much lower figure, thereby realizing the difference in the market value thereof at the time of sale and repurchase, and knowing that Latham, Alexander & Co. held said stock, and would sell the same on his account, repaying themselves out of the money of plaintiff in their hands, and would, at the option of the receiver or purchaser, deliver, before a quarter past two o'clock on same day, said stock certificate and power irrevocable in the name of witness, or guarantied by a member of the New York Stock Exchange, or a friend represented at the exchange, residing or doing business in New York, or by transfer of said stock as provided by the constitution and rules of the New York Stock Exchange, plaintiff delivered said message to the defendant, to be transmitted to New York, to be delivered to the said Latham, Alexander & Co.; that, if said message had been transmitted and delivered in due time, the said brokers would have made the sale on the 21st day of February, at $73 per share."

But plaintiff avers—

"That said message was not promptly transmitted and delivered as agreed, but by the gross negligence of defendant's servants and operatives in charge of the same it was delayed, and not delivered until the 28th day of February, 1890, when said stock had fallen in price to, and was selling in the market at, $55 per share, thus taking several times longer for its transmission and delivery than it required in due course of mail from Columbus, Miss., to New York city; and that the cause of the delay and non-delivery of said message, plaintiff avers, was negligence of the defendant's operators and servants. * * * Wherefore plaintiff sues and demands judgment for $3,451.66, and costs."

To this declaration there are several pleas: (1) The general issue, not guilty. (2) That the message mentioned in the declaration was a night message; and that plaintiff failed to present claim for damages to defendant company within 30 days, as required by the regulations of the company. (3) Defendant sets up contract with plaintiff that no claim for damages should be valid unless made within 30 days after the message was sent, and that the plaintiff failed to present his said claim. (4) Defendant sets up contract that sender of message should not claim damages beyond a sum equal to ten times the amount paid for the transmission of the message, and pays into court the sum of five dollars,—amount of its alleged liability. (5) That said defendant denies that said plaintiff had in the possession of said Latham, Alexander & Co., or in the possession of any one else, subject to their control, 200 shares of the stock of the Tennessee Coal & Iron Company, at the time of the sending of said message; and avers the fact to be that it was the intention of the plaintiff that said brokers, Messrs. Latham, Alexander & Co., should pretend to sell the amount of stock so named in telegram to be delivered or subject to delivery on the 21st day of February, 1890; but the real intent of all the parties to said transaction was to speculate on the rise or fall of said stock, without any intention of selling or delivering the same, but, when called for, to settle the difference between the contract price and the market price on the day when called for,—that is to say, a settlement on margins. Wherefore said defendant says that said transaction was illegal and void, and this it is ready to verify. Replications are filed to second and third pleas; issue joined in fifth plea; issue, in short, by consent to replication to the third plea. The case came on for trial before a jury on the issues presented on the pleadings, and, after hearing the testimony, plaintiff filed his motion for a peremptory instruction to the jury charging them that they shall find a verdict for the plaintiff for the sum to which he is entitled on the facts in testimony, which motion, after argument by counsel *pro* and *con*, was by the court overruled and refused, to which plaintiff then and there excepted; whereupon the defendant filed its motion for a peremptory instruction to the jury charging them that they shall find a verdict only for the amount of the telegram on the facts in testimony, and, after argument, the court gave the instruction found in the record. The charge is, in effect, "that the plaintiff cannot recover; the claim for damages is too remote, uncertain, and speculative, and will not be allowed by you in your verdict." To the giving of the charge the plaintiff excepted. The verdict of the jury was for 32 cents and three-fourths of a mill, to which the plaintiff excepted, and tenders his bill of exceptions, embodying all the testimony and the rulings and order of the court.

The assignment of errors, as far as necessary to be here stated, are: The court erred in giving the instruction to the jury as to the measure of damages in the cause. The circuit court erred in refusing to give the special instruction asked by plaintiff. The question, then, is, did the court err in instructing the jury on the trial of the cause that the claim made by the plaintiff for damages is too remote and speculative to be

allowed by the jury in its verdict? A number of cases are cited by the counsel for appellee to sustain the ruling of the court, among which is the case of *Telegraph Co.* v. *Hall*, 124 U. S. 444, 8 Sup. Ct. Rep. 577. In that case the message was to buy, and not to sell, as in the case at bar. It was dated December 9, 1882, and should have reached the sendee at Oil City, Pa., at 11:30 A. M. that day, but the message was not delivered until the exchange had closed for the day, so that Hall could not purchase the petroleum ordered by the plaintiff; and that at the opening of the board the next day the price had advanced from $1.70 per barrel, the price on the previous day, to $2.25 per barrel, at which price Hall did not deem it advisable to make the purchase, and did not do so. The message was, "Buy ten thousand, if you think it safe." The court held there could be no recovery, because, in point of fact, the plaintiff had suffered no actual loss, and the court say at page 454, 124 U. S., and page 580, 8 Sup. Ct. Rep.:

"It is clear that, in point of fact, the plaintiff had not suffered any actual loss. No transaction was in fact made, and, there being neither a purchase nor a sale, there was no actual difference between the sums paid and the sums received in consequence of it, which could be set down in a profit and loss account. All that can be said to have been lost was the opportunity of buying on November 9th and of making a profit by selling on the 10th; the sale on that day being purely contingent, without anything in the case to show that it was even probable or intended, much less that it would have certainly taken place."

The case at bar is the counterpart of the case cited. The order was to sell 200 shares of stock, but by the fault of the telegraph company this order was not delivered to appellant's brokers in New York, as it should have been, on the morning of the 21st, and not until the 28th; and there was no sale of the stock on the 21st, or on any subsequent day. And it may be said here, as it was there, "all that can be said to have been lost was the opportunity to sell" at a higher price on the 21st and buy at a lower price afterwards. The claim in the case at bar goes much beyond any rule of damages in any of the cases cited. It is not for the difference in the price of the stock between what it was on the 21st, when the order to sell should have been received by the brokers in New York, and what plaintiff actually sold for on a repeated order and no sale on any subsequent day, not even on the 28th, when the order was received, but not acted upon, by plaintiff's brokers. In the case cited, which seems to be quite elaborate, the court, at page 455, 124 U. S., and page 580, 8 Sup. Ct. Rep., goes on to say:

"It is well settled, since the decision of *Masterson* v. *Mayor, etc.,* 7 Hill. 61, that a plaintiff may rightfully recover the loss of profits as a part of the damages for breach of a special contract, but in such a case the profits to be recovered must be such as would have accrued and grown out of the contract itself as the direct and immediate result of its fulfillment. In the language of the supreme judicial court of Massachusetts, in *Fox* v. *Harding,* 7 Cush. 516: 'These are part and parcel of the contract itself, and must have been in the contemplation of the parties when the agreement was entered into; but. if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence

and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in the suit.'"

Counsel make a somewhat vigorous attack on the soundness of the decision in the case of *Telegraph Co. v. Hall*, and say it will never be applied beyond the facts in that particular case. However that may be, we find it cited by the supreme court of the United States approvingly in the case of *Howard v. Manufacturing Co.*, 139 U. S. 205, 11 Sup. Ct. Rep. 500; where it was held—

"That in an action to recover the contract price for putting up mill machinery anticipated profits of the defendant, resulting from grinding wheat into flour and selling same had the mill been completed at the date specified in the contract, cannot be recovered by way of damages for delay in putting it up."

And in that case Justice LAMAR, speaking for the court, at page 206, 139 U. S., and page 503, 11 Sup. Ct. Rep., says:

"The grounds upon which the general rule of excluding profits in estimating damages rests are (1) that in the greater number of cases of such expected profits are too dependent upon numerous uncertain and changing contingencies to constitute a definite and trustworthy measure of actual damages; (2) because such line of profits is ordinarily remote, and not, as a matter of course, a direct and immediate result of the non-fulfillment of the contract; (3) and because most frequently the engagement to pay such line of profits, in case of default in the performance, is not a part of the contract itself,' nor can it be implied from its nature and terms." Citing *Telegraph Co. v. Hall*, and other authorities.

We think the case at bar falls within the principle of the case of *Telegraph Co. v. Hall*, and much authority is cited in line with that decision, so that we do not see why that should not be taken as settled law; at least the case is binding upon us.

Again, the plaintiff ordered the sale of 200 shares of Tennessee Coal & Iron stock,—not his stock, which he held or owned, for he does not claim to have held or owned any such stock at the time of this transaction; but it is said his brokers, Latham, Alexander & Co., had the stock,—not even that they had it and owned it, but, as the witnesses Latham and Alexander both say, in answer to interrogatory 15, (and it may be noticed in passing that the answers of these two witnesses to this interrogatory, and to most of the other interrogatories, are in the same identical words, and notable for the statement of conclusions rather than facts:)

"If Latham, Alexander & Co. had received the said telegram of E. Cahn when it should have been delivered, they would have executed the order within contained, and sold for him 200 shares of stock of the Tennessee Coal & Iron Co., and would have supplied stock in their possession for delivery on account of the sale, according to the custom of the New York Stock Exchange, if said Cahn did not own the stock."

There is at least some obscurity in the meaning of this answer, and the constitution and rules of the New York Stock Exchange are not in the record, and we have not the opportunity of referring to them. The fact is, however, conceded that Cahn did not hold or own the stock in

question at the time of the order to sell on February 21st, nor did he have money in the hands of his brokers at the time to purchase the stock. Latham and Alexander again both testified, in answer to the same question, in the same words:

"Latham, Alexander & Co., on the 21st of February, 1890, did not hold for E. Cahn any stock of the Tennessee Coal & Iron Co. Latham, Alexander & Co. did not hold for E. Cahn any money on deposit with which to buy or sell stock, but they did hold for him securities sufficient to warrant them in making the sale of said stock as directed had the message been received on the morning of February 21, 1890."

Appellant could doubtless have gone into the market and bought the stock for present or future delivery, could have authorized his brokers to do it for him, or they could supply it themselves, as they testify they would have done had they received the order; and, if so, and Cahn had paid or become liable for the market price of the stock that day, there would have been no profit to him in the transaction, and therefore no damage. If, by supplying the stock, Latham and Alexander mean that their firm would have loaned it to him, then his case is that, by the alleged negligence of the defendant company, he was prevented from borrowing 200 shares of Tennessee Coal & Iron stock, and selling it on the 21st of February at its market price on that day, and buying the same number of like shares of stock on the 28th, or on a subsequent day, when the market price had fallen; and so suffered a loss of the profits he would have made if he had borrowed, sold, bought back, and returned, the stock to his brokers. Manifestly, in such a transaction—or, rather, want of transaction—the alleged damages are too uncertain, remote, and contingent to constitute a proper basis for a recovery.

It is insisted that an order, and delivery to an agent of a telegraphic company for transmission, to sell shares of stock, under the circumstances of the transaction in question, implies and means an order to buy to "cover," as it is called; and that such will be held to have been within the knowledge and contemplation of the parties, the plaintiff (appellant) and the appellee, (telegraph company.) Telegraphic companies transmit and deliver messages, for hire, touching business or other relations of the persons who employ them. It is not like contracts between persons for the building of structures, erecting machinery, or even for the delivery of goods, in all of which classes of cases much depends upon what may be considered to have been fairly and justly within the contemplation of the parties when the contract was made; and it may be questioned whether an order to sell 200 shares of a given stock delivered to a telegraph operator for transmission over his line would imply knowledge on his part that an order to purchase the same number of shares of same stock would surely follow. It is said that Scott, the telegraph operator at Columbus, Miss., was informed and well knew the purpose and object of the message, but he says in his deposition:

"I understood it was an order to Mess. Latham, Alexander & Co. to sell 200 shares of Tennessee Coal & Iron,—just what appears on the face of the message."

But, even if he (Scott) was familiar with transactions of this character made in the stock exchange in New York, his company could hardly be held responsible on account of such knowledge possessed by one of its employes. But, even if it could be conceded that an order to sell implied an order to buy, the question remains uncertain as to when such an order to buy would be given for execution. That would, in the nature of things, depend upon the market, and upon the buyer's judgment of the market. Again, the legal, if not the only, presumption would be that Cahn was ordering the sale of his own stock, and not that he contemplated the sale of something he neither had nor proposed to acquire, with no intention that in the sale ordered an actual delivery of the stock was to be made, for such presumption would involve a violation of the law as it has been held in some of the highest courts in the country. In any view of the case, we perceive no error in the charge to the jury in the court below ·and the judgment is affirmed; and it is so ordered.