ILLINOIS CENT. R. CO. v. DAVIDSON.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1896.)

No. 300.

**1. COMMON CARRIERS—INJURY TO PASSENGERS—CONTRIBUTORY NEGLIGENCE—EVIDENCE.**

Where plaintiff, leaving defendant's railroad train, and going onto a platform of insufficient width, provided by the company, was caught between two trains passing on the nearest tracks on either side of such platform at a high rate of speed, and injured thereby, *held*, that evidence to show that theretofore passengers had been accustomed to leave the trains on that side was admissible as bearing on the question of contributory negligence.

**2. SAME—EVIDENCE—OPINION OF WITNESSES.**

Where personal injury to a passenger on a railroad is alleged to be due to the insufficient width of a platform, a witness may give his opinion as to the safe method of constructing platforms with reference to the track, or an esti-

mate, founded on actual measurements of several other locomotives in use on the road, of how far the parts of the locomotives and cars extend over the tracks.

**3. SAME—LOSS OF EARNINGS—MEASURE OF DAMAGES.**

Where plaintiff has been unable to work for a long time by reason of his injuries, evidence of his earnings for several years past is admissible as going to show the amount of damages.

**4. SAME—PLEADING AND EVIDENCE—EARNINGS WITH FORMER EMPLOYER.**

Where the averment of special damages only shows loss of commissions from plaintiff's employer at the time of the injury, but such employer is the successor of a company whom plaintiff had previously served in the same capacity, and under the same contract, evidence of plaintiff's earnings while employed by such company is admissible.

**5. RAILROAD COMPANIES—DEFECTIVE PLATFORMS, ETC.—INSTRUCTIONS.**

A charge that "the law imposes the duty on railroad companies to keep in safe condition all portions of their platforms, approaches thereto, and exits therefrom, to which the public are invited or would naturally resort, and all portions of their station grounds reasonably near to the platforms where passengers take passage on or are discharged from their cars," while too broad a statement of the proposition, is not reversible error where, under the evidence, it is impossible that the jury could have been misled thereby to the injury of the party complaining.

**6. TRIAL—INSTRUCTIONS.**

It is not error for a federal court to say to the jury in a personal injury case that "it cannot be doubted, under the evidence, that the place where the plaintiff received his injury was a most dangerous one," where the jury are also told that they are the exclusive judges of the weight of the testimony.

**7. SAME—CURING ERROR—REDUCTION OF VERDICT.**

Instructions to a jury that they may consider physical pain and suffering which the person injured "may" have endured in the past and "is likely" to endure in the future, or time that "may" be lost in the future, under the evidence, would not lead the jury to think that they can go outside the evidence, and infer consequences which are conjectural and unwarranted; and the inaccuracy of such expressions, if error, is cured where the court gives judgment for only three-fifths of the amount of the verdict.

**8. SAME—REQUESTS TO CHARGE—MATTERS OF LAW AND FACT.**

A request to charge, which assumes as matter of law a question of fact which belongs to the jury, is faulty, and properly refused.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This was an action on the case by Wilbur F. Davidson against the Illinois Central Railroad Company for damages for personal injuries.

This case has been tried three times, and is here the second time. See 12 C. C. A. 118, 64 Fed. 301. The action is on the case for personal injury suffered by the defendant in error, Wilbur F. Davidson, as a passenger, while leaving a suburban train of the plaintiff in error at Hyde Park station, Chicago, February 27, 1893. On the first trial the jury disagreed; on the second there was a verdict for $43,000, of which the court required that $18,000 be remitted; and on the last trial the verdict was for $50,000, of which the court required a remittitur of $20,000, and gave judgment for the remainder, with interest.

The amended declaration contains five counts. The first, after alleging the duty of the railroad company to provide reasonably safe means at the station whereby the plaintiff could leave the train and premises without unnecessary or unreasonable hazard of injury to his person, proceeds to charge that: "The defendant, disregarding its duty in that behalf, carelessly, negligently, and willfully, then and there, at to wit, its said Hyde Park station, provided means for leaving its said train and premises that, as the said defendant well knew, were grossly unsafe and inadequate in this, to wit: it then and there provided a narrow platform of the width, to wit, of four feet, between two of the tracks of its said railway, and close to, to wit, within one foot of, the

rails thereof on either side of said platform, for its passengers and the said plaintiff to go and walk upon in leaving the train aforesaid, at, to wit, its said Hyde Park station, which platform was of insufficient width to permit passengers to be or walk thereon with reasonable safety from injury from passing trains, and was so constructed that the defendant's engines and trains running upon its two tracks last mentioned, in passing by the said platform on either side thereof, extended to wit, six inches over the said platform, leaving an unreasonably insufficient and narrow space for the defendant's passengers upon said platform between such trains when so passing each other, of but, to wit, three feet in width; and also permitted and caused its servants in charge of its said trains to manage and drive the same in approaching and passing the said platform at frequent intervals and at a rapid and dangerous rate of speed; and by reason of the said grossly inadequate and unsafe means so afforded its passengers and the plaintiff as aforesaid the said defendant then and there exposed its passengers and the said plaintiff upon the said platform to great and imminent danger of being struck and injured, and while the plaintiff, being a passenger as aforesaid, of the said defendant, was then and there on the said platform for the purpose of leaving the said defendant's train hereinabove first mentioned and its premises at, to wit, its said Hyde Park station, and being in the exercise of ordinary care on his part, and while at the same time a certain cattle train of the defendant, going south, and running at, to wit, the rate of twenty miles an hour, was passing by the said platform, upon the defendant's track next east of said platform, the said defendant then and there caused a certain other passenger train going north upon its track west of said platform, under the care and management of certain of its employés and agents in that behalf, to pass the said platform at a rapid and dangerous rate of speed, to wit, at the speed of twenty miles an hour, whereby the plaintiff was then and there exposed to' great and imminent peril of his life, and he, the said plaintiff, being unaware of the danger to which he was so subjected, by reason of the gross and willful negligence aforesaid of the said defendant in providing the unsafe and inadequate means aforesaid for leaving its said first-mentioned train and premises, was, without want of due care on his part, then and there caught in the narrow space aforesaid upon said platform between said passenger train and said cattle train, and was struck and run down by the said passenger train of the said defendant as it passed the said platform, and the said plaintiff was then and there thereby thrown and hurled by the said passenger train against the side of said defendant's cattle train, by means whereof," etc.

The second count, alleging the same construction and situation of platform and tracks, charges that it was the duty of the defendant, in order to apprise passengers upon the platform of the approach of trains on the adjacent tracks, to cause the bell or whistle upon the engines thereof to be sounded, and that the passenger train by which the plaintiff was struck was negligently run upon him without the bell or whistle being sounded.

In the third count it is charged that the passenger train was run carelessly at an unreasonably rapid and dangerous rate of speed.

The fourth count is not perceived to be essentially different from the first, the negligence causing the injury being alleged to have been in the construction of the platform.

The fifth count, which was added after the reversal by this court of the first judgment, alleges that at its Hyde Park station "the defendant had divers main tracks of its said railway running north and south, and lying, to wit, seven feet distant from each other, and divers platforms between and alongside of the said main tracks; and the passengers of the said defendant and the said plaintiff, as the said defendant well knew, unless they were prevented by it from so doing, were likely to, and naturally would, select the east side of the said train in which the said plaintiff was so being carried in alighting therefrom at its said Hyde Park station, which east side of the said train, by reason of the number of the said defendant's main tracks on that side, and the frequency with which trains passed by thereon, as from time to time they were wont to do, and at a high rate of speed, was a place on its premises at its said Hyde Park station where its passengers and the said plaintiff in leaving its said train, if permitted so to do, would be and

were, as the said defendant well knew, exposed to the unreasonable, great, and unnecessary danger of being struck by its trains and injured; and it then and there became and was requisite and necessary for the said defendant, as a measure of ordinary care and prudence, to prevent its passengers and the said plaintiff by gates or fenders on its car platforms, or by an agent or guard, to direct them from leaving its said train on the east side; but the said defendant, disregarding its duty in that behalf, as the said plaintiff, being then and there a passenger of the said defendant as aforesaid, and being in the exercise of ordinary care on his part for his own safety, was about to leave its said train, to wit, at its said Hyde Park station, then and there carelessly, wrongfully, and negligently failed by any of the means aforesaid, or by any means, to prevent the said plaintiff from leaving the said train by the east side thereof, and by its agent in that behalf directed him, the said plaintiff, to leave by that side. And the said plaintiff, being unaware of the dangers aforesaid, to which he was then and there thereby exposed as aforesaid, and being in the exercise of ordinary care on his part to avoid injury, then and there alighted from the said train on the east side thereof, and, while walking on one of the said defendant's said platforms between its said main tracks and its said Hyde Park station, in leaving its said train and premises, by reason of the gross negligence and carelessness aforesaid of the said defendant in permitting him to so leave the said train on the east side thereof, was, without want of due care on his part, then and there caught in the narrow space upon said platform between a certain passenger train and a certain cattle train of the said defendant passing by said platform on either side thereof, and was struck and run down by the said passenger train," etc.

The errors assigned have relation to the admission of evidence and to instructions given or refused.

Sidney Andrews, for plaintiff in error.

Edward R. Woodle, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

Before entering upon the particular questions presented, it is important to observe that the duty of a common carrier of passengers requires the exercise of the highest practicable care for their safety, and that in some measure or degree the duty continues until the passenger has left the premises of the carrier. If, therefore, it be true, as contended, that the plaintiff in error had provided a suitable and safe platform on the west side of its tracks at Hyde Park, by which it was intended that passengers by its suburban trains should make their exit, and that the platform in question, conceded to have been a perilous place, was not intended for such use, it was the plain duty of the company to its passengers, and especially to a stranger, or to any one not known not to be a stranger, to guard him by all reasonable means against going into the dangerous situation. In this view, it was the duty of the company to prevent, or at least to warn, the defendant in error against alighting from its train on the east side, from which he was likely to go upon the platform where he was hurt. While it was perhaps unnecessary to show that theretofore passengers had been accustomed to leave the trains on that side, the evidence on that point was not incompetent. It tended to show actual notice to the company of the probable presence of passengers upon the platform, and of the necessity that trains on the adjacent tracks be run

consistently with their safety. The evidence was also competent, and perhaps important, on the question of contributory negligence. Railway Co. v. Lowell, 151 U. S. 209, 14 Sup. Ct. 281.

The question to a witness, "What is the safe method of constructing platforms with reference to the track, so that trains passing will not extend over the platform?" was objected to as "incompetent, irrelevant, and immaterial." Another witness was permitted, over objection, to testify that the bunting beams on the engines in use by the plaintiff in error after the accident, as he had observed them, were all of the same length, and that by two or three measurements he had found that they extended over the rails "about twenty to twenty-one inches." It is the common and indispensable practice in the conduct of trials to accept the estimates of witnesses, though not experts, in respect to matters of distance, dimension, time, and the like, and it is no objection to the testimony of either of these witnesses that he gave only an opinion. Besides, it is evident that the testimony was not important. The defendant in error, it is certain and undisputed, was struck by a beam or other part of a locomotive or car extending over the platform upon which he was walking; how far, is not material. The court might well have instructed the jury that, if the company saw fit to construct a platform in a manner and place to make such accidents possible, it was bound to move its locomotives and cars with such care as to prevent avoidable injuries. If, therefore, the passenger in this case was properly upon the platform, and was run down without fault of his own, the company is responsible, and it is not material whether the negligence be found in the situation and construction of the platform, or in the running and management of trains, or in both. It is to be observed, too, that the testimony in question was concerning matters peculiarly within the knowledge of the plaintiff in error. If the beam of the particular engine which did the harm was different from the beams on other engines of the company, and projected beyond the tracks less than the witness estimated, the plaintiff in error could easily have made the proof; and, not having deemed it worth while to do so, is in no position to ask a reversal of the judgment because of the supposed incompetency of this evidence.

The defendant in error, as a witness in his own behalf, testified that for a number of years before his injury he had been an agent in Michigan for the General Electric Company, selling apparatus for electric lighting, electric power for railroads, etc., and that his earnings in 1886 were $14,133.53, in 1887 $12,332.18, in 1888 $18,943.60, in 1889 $10,773, in 1890 $26,000, in 1891 $18,400, in 1892 more than $32,000, and that those earnings consisted mainly in the difference between the net prices which he was required to obtain for the company and the prices at which he was able to sell to purchasers. It is contended that these earnings "are too speculative, contingent, and unreliable" to form a basis for the estimation of damages by the jury. The evidence also shows that by reason of the injury the defendant was unable for more than a year to prosecute his business, and that his earnings therefrom practically ceased. Without entering upon a review of the numerous cases upon the subject, we deem it enough to

say that the testimony was competent. "In an action for a personal injury, the plaintiff is entitled to recover compensation, so far as it is susceptible of an estimate in money, for the loss and damage caused to him by the defendant's negligence, including not only expenses incurred for medical attendance, and a reasonable sum for his pain and suffering, but also a fair recompense for the loss of what he would otherwise have earned in his trade or profession, and has been deprived of the capacity of earning by the wrongful act of the defendant." Railroad Co. v. Putnam, 118 U. S. 546, 554, 7 Sup. Ct. 1. Or, as it is expressed in District of Columbia v. Woodbury, 136 U. S. 450, 459, 10 Sup. Ct. 990, 993: "All evidence, tending to show the character of his ordinary pursuits, and the extent to which the injury complained of prevented him from following those pursuits, was pertinent to the issue." See, also, Wade v. Leroy, 20 How. 34; Railway Co. v. Volk, 151 U. S. 73, 14 Sup. Ct. 239; Railroad Co. v. Clarke, 152 U. S. 230, 14 Sup. Ct. 579. The following cases, cited to the contrary, are not inconsistent, and most of them, upon their facts, are inapplicable: Railroad Co. v. O'Reilly, 158 U. S. 334, 15 Sup. Ct. 830; Railroad Co. v. Elliott, 149 U. S. 266, 13 Sup. Ct. 837; Howard v. Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500; The Lively, 1 Gall. 325, Fed. Cas. No. 8,403; The Amiable Nancy, 3 Wheat. 546; L'Amistad Rues, 5 Wheat. 385; Cahn v. Telegraph Co., 1 C. C. A. 107, 48 Fed. 810; Telegraph Co. v. Hall, 124 U. S. 444, 8 Sup. Ct. 577; Bierbach v. Rubber Co., 54 Wis. 208, 11 N. W. 514; Lincoln v. Railroad Co., 23 Wend. 424; Griffin v. Colver, 16 N. Y. 489.

It is further urged that the testimony in respect to the earnings of 1886, 1887, and 1888 was incompetent, and that the motion made to suppress it should have been sustained, because it was not embraced in the averment of special damage found in the declaration, that averment being to the effect that the plaintiff had lost and been deprived of his commissions and earnings as general agent for Michigan of the General Electric Company, while during the years named he was in the employment of the Thomson-Houston Company, which is not mentioned in the declaration. The objection is not available. The proof is that the General Electric Company was successor to the Thomson-Houston Company, and that the contract under which the plaintiff served the first company was, in substance, continued with the successor. As a matter of pleading it was necessary to allege the loss of business under the existing contract and employment, but, to aid the jury in determining the extent of that loss, evidence of the earnings under the previous agency and contract was clearly proper.

It is further contended that the testimony concerning earnings was improperly admitted in rebuttal. That was within the discretion of the court.

The assertion of a variance between the declaration and the proof is not tenable. It is not important whether or not the platform in question was provided by the defendant company for the use of passengers arriving on the south-bound suburban train. It was in a place where it was liable and likely to be used by such passengers, and consequently the responsibility of the company was the

same as if it had been so intended. The evidence in the record is sufficient to justify a recovery under any of the counts of the declaration, and there was, therefore, no error in refusing instructions to the contrary.

The court gave to the jury the following instruction, upon which error is assigned:

"The law imposes the duty on railroad companies to keep in safe condition all portions of their platforms, approaches thereto, and exits therefrom, to which the public are invited, or would naturally or reasonably resort, and all portions of their station grounds reasonably near to the platforms where passengers take passage on or are discharged from their cars."

Though justified by some authorities (McDonald v. Railroad Co., 26 Iowa, 124; Id., 29 Iowa, 170; Railroad Co. v. Riley, 39 Ind. 568, 586), the proposition seems to be too broadly stated: Kelly v. Railway Co., 112 N. Y. 443, 20 N. E. 383; Moreland v. Railroad Co., 141 Mass. 31, 6 N. E. 225. In the first of these cases the passenger fell upon the stairway of a station made slippery by a fall of sleet and snow, and in the other was hurt by stepping on shingles lying on the station grounds, and it was held in each case that the company was bound to exercise simply ordinary care in view of the danger to be apprehended; but at the same time it was conceded that, "where the injury occurs from a defect in the roadbed or machinery, or in the construction of the cars, or where it results from a defect in any of the appliances such as would be likely to occasion great danger and loss of life to those traveling on the road," the rule of "utmost care" applies, "for the reason that a neglect of duty in such a case is likely to result in great bodily harm, and sometimes death, to those who are compelled to use that means of conveyance." "That rule is applicable to such appliances of a railroad as would be likely to occasion great danger and loss of life to the traveling public if defects exist therein, on account of the velocity with which cars are moved, and the destructive and irresistible force which accompanies such motion." It is not alleged in the declaration or in argument that the platform in question was out of repair, or, considered by itself, defectively constructed. By the averment and by the proof it was dangerous by reason of its location in relation to the adjacent tracks and passing trains. That the company was bound by the rule of supreme diligence to guard its passengers against the dangers of that situation, there can be no doubt, and, this being so under every phase of the evidence in the case, it is impossible that the jury could have been misled by this part of the charge to the injury of the plaintiff in error. It follows, without further consideration, that the court did not err in saying to the jury that "it cannot be doubted under the evidence that the place where the plaintiff received his injury on the platform east of the station between passing trains running in different directions on tracks very near to each other was a most dangerous one." There was, and could be, no dispute about it, and, besides, the jury was told explicitly that they were "the exclusive judges of the weight of the testimony and of the credibility of witnesses."

It is urged that the court erred in charging "that there was no

evidence that it was customary for passengers to alight on the west side, and that the company had prepared a platform for their convenience on that side." The court gave no such charge. Instead, it said that there was no evidence that the plaintiff "had any previous knowledge of the situation, or that it was customary," etc. Besides, the matter was incidental, and of little importance. The objections made to those portions of the charge covered by the twenty-third and twenty-sixth specifications of error are not deemed important enough to justify a statement of them here. The jury were told that, if they found that the plaintiff's injuries were permanent, they might in determining the amount of damages consider "the physical pain and suffering which the plaintiff may have endured in the past, and is likely, under the evidence, if you so find, to endure in the future"; and also, "the time lost by him in the past, or that may be lost in the future, if any, and, under all the evidence, determine," etc. The objection to these propositions is that by the use of the words "likely" and "may" the jury were not restricted to the consideration of such pain and loss of time as were reasonably certain to occur, and in support of the objection are cited: Fry v. Railway Co., 45 Iowa, 416; White v. Railroad Co., 61 Wis. 536, 21 N. W. 524; Hardy v. Railroad Co., 89 Wis. 183, 61 N. W. 771; Block v. Railroad Co., 89 Wis. 371, 61 N. W. 1101; Raymond v. Keseberg (Wis.) 64 N. W. 861; Smith v. Milwaukee Exchange, Id. 1041. We are not able to believe that the jury were led to think that they could go outside of the evidence to infer consequences which were conjectural and unwarranted. Things which, under the evidence, are likely to happen, are reasonably certain to happen (Scott Tp. v. Montgomery, 95 Pa. St. 444); and the word "may," used, as it was, in the same connection, was probably understood in the same way. Greater accuracy of expression is, of course, always desirable; but, in this instance, if error was committed, and was possibly harmful, it has been more than cured by the action of the court in giving judgment for but three-fifths of the amount of the verdict. Upon the undisputed evidence in the case, that judgment cannot be regarded as excessive. Objections to other portions of the charge present no essentially different question from those already considered.

An extended argument has been made, and numerous decisions cited to show, that the case should have been taken from the jury on account of variances between the proof and averments of the declaration, and because of contributory negligence. It would serve no valuable purpose to attempt a review of the evidence. The supposed variances are upon immaterial points. In respect to contributory negligence, the burden of proof was upon the plaintiff in error, and, if it can be said that there was evidence upon the point worthy of the jury's attention, it was certainly not such as to warrant a peremptory withdrawal of the question from their consideration.

The following instruction, asked by the plaintiff in error, was refused:

"If you believe from the evidence that the plaintiff knew, or would, by the exercise of ordinary care, have known, that the planking between tracks two and three was not of a reasonably safe width for him to walk or remain upon should another train pass by upon track two, and you further find from the evidence that he voluntarily and unnecessarily remained on such planking, and by reason thereof was injured as complained of, then he is not entitled to recover, and your verdict must be for the defendant."

This instruction is identical with one to which, when the case was first here, we declared that we saw no objection, and that, as nothing in the general charge covered the same ground, we thought its refusal error. The general charge before us now is ample upon the point, ending with the explicit statement that if "by the exercise of proper care and prudence" the plaintiff "could have avoided the place of danger and injury and was thereby guilty of contributory negligence, he cannot recover." It is to be observed, too, that the instruction asked is in fact objectionable. The gist of it is in the proposition "that he voluntarily and unnecessarily remained on such planking." That is not a true test of negligence. He was not held there by force or by threats, and therefore remained voluntarily, but whether he remained there unnecessarily was a matter of knowledge and opinion or judgment. He may have perceived his danger, and yet not have been at fault for failure to perceive that to go was safer than to stay.

The eleventh request for instruction, if in nothing else, was faulty in assuming as matter of law that a speed of not more than four or five miles an hour was not, under the circumstances, too much for the train by which the plaintiff was run down. Whether it was or not should have been left to the jury.

The twelfth request is obnoxious to a like objection. It assumes that a failure of the plaintiff, while he was walking along the platform, to look south for an approaching train, was negligence. Whether it was or not was a question for the jury.

The first part of the thirteenth request is to the effect that, a proper platform having been prepared at the west side, the plaintiff ought to have made his exit from the car on that side. That depended on the circumstances, and therefore belonged to the jury. Besides, it by no means was certain on the evidence that the platform on the west side extended to the car in which the plaintiff arrived. The latter part of the request is sufficiently covered by the charge given.

The judgment of the circuit court is affirmed.