# GREAT FALLS & OLD DOMINION RAILROAD CO. *v.* HILL.

### STREET RAILWAYS; EVIDENCE; NEGLIGENCE.

1. In an action against a street railroad company, by a passenger, to re-
cover damages for injuries received in stepping off a car from its
side furtherest from a station platform, evidence is admissible on be-
half of the plaintiff of a custom of passengers—even though it was
unknown to the plaintiff—to get off cars from that side at such
station, as tending to show negligence on the part of the defendant
in failing to provide means to put an end to the practice, by main-
taining a gate or some other effective device (following *District of
Columbia* v. *Dietrich*, 23 App. D. C. 577), and also as bearing upon
the plaintiff's contributory negligence.

2. The entire duty of a street railroad company to passengers alighting
from its cars is not discharged by providing a platform on one side
of the track at a stopping place, but it is its duty to exercise the
highest practicable degree of care for the safety of such alighting pas-
sengers; and in an action against such a company by a passenger who
was injured while alighting from the side of the car furtherest from
such a platform, it is not error for the trial court to refuse to in-
struct the jury, at the request of the defendant, that as matter of
law it was the duty of the plaintiff to alight from the side nearest
the platform, and that the failure of the defendant to close the exit
furtherest from the platform, by a gate or otherwise, was not an im-
plied invitation to the plaintiff to step from that side, where the evi-
dence shows that it was the frequent custom of passengers to alight
from that side, and that, on the occasion of the plaintiff's injury, the
motorman and an acquaintance obstructed the exit nearest the plat-
form, and that the motorman did not warn the plaintiff not to use
the other exit; nor is it error for the trial court in such a case to
refuse an instruction asked by the defendant, that if the plaintiff, in
using the exit furtherest from the platform, could have seen by the
exercise of reasonable care that there was no platform on that side,
but only an open roadway, she alighted at her peril, the question
of her contributory negligence under the circumstances being for
the jury. (Mr. Justice Van Orsdel *dissenting*.)

3. A carrier of passengers must be presumed to know that persons of all ages and conditions, strangers as well as those familiar with the surroundings, nearsighted people wearing glasses as well as those of perfect sight, are frequently among its passengers, and it is required to provide appliances, ways and means adapted under the circumstances, to the safe transportation of all such persons. (Following *Metropolitan R. Co.* v. *Falvey,* 5 App. D. C. 176.)

4. Where, in an action against a street railway company by a passenger who was injured in alighting from the side of a car of the defendant furtherest from a station platform, the plaintiff did not rest with proof of the injury merely, and the question of the defendant's negligence and the plaintiff's contributory negligence were submitted to the jury in proper special instructions, but the trial court in its charge voluntarily instructed the jury that the plaintiff made out a prima facie case by showing that she was a passenger, and thereby shifted the burden to the defendant to show that the injury was not caused by the defendant's negligence and then charged that the burden of showing contributory negligence was on the defendant, and gave the law applicable thereto, it was *held* that if the trial court committed error in the statement in regard to the prima facie case in the application to the facts, it was not error prejudicial to the defendant. (Following *Weaver* v. *Baltimore & O. R. Co.* 3 App. D. C. 436; *Harbison* v. *Metropolitan R. Co.* 9 App. D. C. 60; *City & Suburban R. Co.* v. *Svedborg,* 20 App. D. C. 543, s. c. 194 U. S. 201, 48 L. ed. 935, 25 Sup. Ct. Rep. 656.)

No. 2029. Submitted December 9, 1909. Decided January 12, 1910.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, upon verdict, in an action to recover damages for alleged personal injuries. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action to recover damages for a personal injury to the plaintiff, Gertrude T. Hill, a passenger on defendant's electric car, sustained in alighting from said car. Plaintiff fell in stepping from said car to the roadway, and broke a bone in her hip or thigh, which caused her great pain, compelling her to remain in a hospital for a considerable period

at a great expense for care, surgeon's fees, etc. The injured leg has become shorter by an inch, and she is probably permanently crippled.

It appears that defendant, the Great Falls & Old Dominion Railroad Company, operated cars from the city of Washington over the aqueduct bridge, connecting at the south end thereof with cars for Arlington cemetery. Plaintiff, aged fifty-nine years, in company with her daughter, aged twenty-one, had come to Washington from her home in Richmond, Indiana, for a visit of a few days, in August, 1907. She had made her arrangements to leave for home in the afternoon of August 23d, and purposed visiting Arlington in the morning. She and her daughter, in company with a friend, Miss Tullidge, who lived in Washington, took defendant's bridge car on the North side of the bridge to ride over to transfer to the Arlington car.

The road at the south end of the bridge is unpaved. The defendant maintained a long platform on the west side of the roadway, and the east side of the track, opposite the platform, in so far above the roadway that the car step is from 24 to 36 inches from the ground. The car has east and west doors or openings to steps. The doors were open and there were no gates. The car stopped at or near the south end of the bridge, along side the platform, for passengers to change. The Arlington railway tracks were on the east side of the roadway, and the passenger car waiting thereon was nearly opposite the other. Plaintiff was seated near the front or south end of the car. Her daughter and Miss Tullidge were just behind her. So far the facts are substantially undisputed.

The plaintiff testified, in substance, that she was nearsighted and wore glasses. When the car stopped she started to leave by the front end, followed by her daughter and her friend. Reaching the car platform, she looked to her right—the west— and saw the motorman and a young woman in conversation. These obstructed the exit and the view on that side completely. She turned to the left,—the east,—looked down, and the way seemed perfectly clear. She saw the Arlington car on that side, and then stepped off into "what seemed space, and realized

that she had suffered some terrible accident." Replying to questions, she said it appeared all right. Saw nothing whatever that would indicate that there was any dangerous or unsafe place to step in, or she would not have stepped out. Cross-examined, she said that the young woman talking to the motorman had gone out on the front platform before the car stopped. When it stopped she supposed it was the place to get off, and she arose and walked to the door in no hurry. She had to pass no one to reach the door leading to the car platform. There was nothing to prevent her looking out in front of the car, but she was looking at the platform of the car as she went out. The motorman was standing to the right of the controller, absorbed in conversation with the young woman, who stood on that side. She saw she could not get out that way, and turned to the left. Before stepping off she took hold of the hand bar with her right hand. She looked down carefully, and the way seemed open. She first saw the Arlington car on her left when she reached the door. She remembered her daughter saying after the accident: "Won't some one come and help my mother, or help us?" She did not remember saying to her daughter: "If you would go ahead I never would have gotten this fall," and that she did not say it. Nor did her daughter reply: "You don't give anybody a chance, but rush right out." Plaintiff's daughter testified, as her mother did, to getting in the car for the trip. She said that plaintiff was in front, Miss Tullidge next to her, and witness was about 3 feet behind Miss Tullidge, as they walked to the front to get off. Just as witness had reached the front door and was in the act of stepping on the car platform, she was startled to hear the motorman give a cry as though frightened. Witness stepped to the side door and saw her mother lying on the ground. The motorman was talking to a woman, a little near the west side, and she saw him turn and lean forward. Miss Tullidge was on the east side, near the step, when he gave the cry. There was no guard or anything on the west side to prevent anyone getting off on that side. Witness started to get off there too, but the motorman turned her to the west side. On cross-examination

she said that her mother did not rush out, and denied that the remarks recited above were made by her or her mother. She went back to the place a few days later, and standing on the ground, saw that the step was about her waist line. Miss Tullidge testified that plaintiff was about 3 feet in front of her as they walked out, and plaintiff stepped out of the east door or opening. She was walking with care, and took hold of the bar as she stepped down. Witness was about to follow when the motorman said, "Not that way, madam." Plaintiff had about struck the ground when the motorman called out, as above. There was no bar or gate, and no sign of any kind to indicate which way they should go. The young woman talking with the motorman blocked the way on the west side. Witness went out on the right side and went to plaintiff, who was lying on the ground. Plaintiff was taking the step when the motorman called out, but too late to save her. It did save the witness.

The testimony of other witnesses tended to show that they had daily, or almost daily, traveled on the car, that the track was higher than the roadway some 12 or 15 inches near the end of the bridge. That many passengers get off on the east side daily, and witness frequently did so. One of the witnesses said that the step was probably 30 or 36 inches from the ground.

On behalf of the defendant, the motorman testified that he had been running the car about one year. He had always made a practice, when the car stopped, to take off his controller and turn to the right, and, when passengers came out, to say: "Go to the right, ladies; it is too high on this side." He always laid a hand on the door facing. On the day in question the first lady who came out went to the right and got out. The second lady bolted to the left. She shoved past him, knocked his hand away, and said, "I can get off on this side." Before she fell off, he said: "Don't get off on this side, lady; it is too high; you might fall." This was said twice. As soon as she started he believed she was going to fall and grabbed at her, but it was all done so quickly he could not do anything. He was not talking to the lady who came out in front of plaintiff,

and she did not obstruct the way. The platform on the west side of the car can be seen from the car; it is about 60 feet long. There is no platform on the east side and that is the reason he did not allow passengers to get off there if he could help it. That he went to plaintiff's assistance. Her daughter said, "Mother, why did you get off on that side?" Plaintiff replied, "Well, I thought I could." The step of the car is about 12 or 14 inches below the platform, on the west side, and is about 20 inches from the ground, on the east side. Mrs. Cutshaw, who was the lady alleged to have engaged in conversation with the motorman, testified that she saw plaintiff board the car on the north side of the bridge. She was apparently in a nervous condition and wanted to hurry over. Witness went out of the car when it stopped. Did not stop to have conversation with the motorman. Just before she started to go out, the motorman took off his controller, turned around, and said, "Ladies, don't go out this way." Was getting out when some one shoved her. Looked around and saw a woman who got off on the wrong side, after the motorman had told her twice not to get off on that side. She saw the party get off. The motorman tried to catch her, but could not. After the lady fell, witness went out on the right side and went to her. Heard plaintiff's daughter say, "Mother, why did you get out on this side when the man told you to get out on the other?" Did not remember plaintiff's reply. Standing in the car one can see the platform on west side of the road; at the door also. On cross-examination she said: The motorman was standing as he always does when the car stops. There was no gate and he always puts his hand against the car. He was in that position when witness felt the shove mentioned. After shoving witness, plaintiff turned to left and said, "I can get out on this side of the car." She pushed his arm when she said this. She appeared to be in a great hurry. Several witnesses, employers and passengers, corroborated the evidence of the motorman substantially in regard to his calling out. One of the foregoing witnesses, the conductor, said it was a very strict rule of the defendant to have passengers get off on the side where the long

platform was. The only notice posted in the car was one that passengers must not stand on the platform of the car. Having been charged in regard to the law applicable to the facts, the jury returned a verdict for plaintiff for $5,000.

*Mr. Wilton J. Lambert* and *Mr. Rudolph H. Yeatman* for the appellant.

*Mr. A. E. L. Leckie, Mr. Creed M. Fulton,* and *Mr. Joseph W. Cox* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first proposition, in regular order, is founded on the exceptions taken to the evidence relating to the frequent custom of passengers to get off the car at the stopping place, on the left or east side. The ground of the objection was that there was no evidence tending to show that plaintiff, a stranger, was aware of any such custom. The proposition of the appellant may be a sound one in a case where such a custom is set up to assert a right, or justify an act that the party asserting it must, ordinarily, have had knowledge of the custom. But where, as in this case, the purpose of proving such a custom is to show actual notice to the car company of a practice by passengers violative of its rules of caution, and accompanied with probable danger, we think it admissible as tending to sustain the charge of negligence in the failure to provide means to put an end to the practice by maintaining a gate, or some other effective device. *District of Columbia* v. *Armes,* 107 U. S. 519–524, 27 L. ed. 618–620, 2 Sup. Ct. Rep. 840; *District of Columbia* v. *Dietrich,* 23 App. D. C. 577–582; *Illinois C. R. Co.* v. *Davidson,* 22 C. C. A. 306–309, 46 U. S. App. 300, 76 Fed. 517.

The evidence was competent, also, as bearing on the question of plaintiff's contributory negligence, which was the main

issue for the determination of the jury, under the evidence submitted. *Illinois C. R. Co.* v. *Davidson, supra.*

2. The first, second, fourteenth, and fifteenth assignment of error have been grouped by the appellant as raising the same question. They are founded on exceptions taken to the refusal of two prayers for instructions submitted by defendant, and to the granting of two submitted by plaintiff.

The first of the two refused prayers of the defendant was to the effect that, as a matter of law, if a safe platform had been provided on the west side of the car track for the use of passengers in getting on and off the car, it was the duty of a passenger to get off on that side, unless otherwise directed by defendant's employees, and, if plaintiff disregarded this duty, a verdict should be returned for defendant. The second was to the effect that, as a matter of law, the failure to keep a gate or other contrivance closed on the east side of the front car platform was not an implied invitation to plaintiff as a passenger to step from that side, provided there was a safe platform on the other side, maintained for the use of passengers. The second instruction given at the request of the plaintiff was to the effect that, if the defendant stopped its car at a place where it was safe to alight on one side and dangerous on the other, then it was the defendant's duty to exercise the highest degree of care to prevent plaintiff from falling off on the dangerous side; and if the jury shall find, from all the evidence, that defendant failed to exercise such care, and that such failure was the sole cause of the injury, their verdict should be for the plaintiff. The third instruction given at plaintiff's request was to the effect that, if plaintiff was a passenger, she had a right to assume that any place where the car was stopped for her to alight would be reasonably safe; and she had a right to regulate her conduct on that assumption, and the degree of care she was bound to exercise was only such as a person of ordinary care, acting under such assumption, would have exercised under the circumstances of this case.

There is some conflict of authority with respect to the proposition contended for by appellant, as applied in the case of

steam railways which stop at regular stations. However this may be in the case of such railways under ordinary conditions, there appears to be no good reason for applying such a rule in the case of the ordinary electric railways, which run along the streets of cities, and adjacent bridges and roadways, for the accomodation of persons traveling short distances. Ordinarily such cars have no stations, and stop in streets and public ways to answer the convenience of passengers. Whilst they may, in instances where the track is permitted to be built above the surface of such ways, maintain platforms on one side, at suitable places, it is going too far to say that the entire duty of such carrier is discharged by merely making such provision. It is the duty of a carrier, as stated in another instruction given at the request of plaintiff, to exercise the highest practicable degree of care for the safety of its passengers, not only in the matter of carriage, but also in respect of means for getting on and off its cars. *Washington & G. R. Co.* v. *Harmon (Washington & G. R. Co.* v. *Tobriner)* 147 U. S. 571–580, 37 L. ed. 284–288, 13 Sup. Ct. Rep. 557; *Warner* v. *Baltimore & O. R. Co.* 168 U. S. 339–348, 42 L. ed. 491–497, 18 Sup. Ct. Rep. 68; *Baltimore & O. R. Co.* v. *State,* 60 Md. 449–463; *Lehman* v. *Louisiana Western R. Co.* 37 La. Ann. 705–707; *Missouri P. R. Co.* v. *Wortham,* 73 Tex. 25–27, 3 L.R.A. 368, 10 S. W. 741; *Gulf, C. & S. F. R. Co.* v. *Gatewood,* 79 Tex. 89, 10 L.R.A. 419, 14 S. W. 913; *Louisville, N. A. & C. R. Co.* v. *Lucas,* 119 Ind. 583–588, 6 L.R.A. 193, 21 N. E. 968; *Boyce* v. *Manhattan R. Co.* 118 N. Y. 314–318, 23 N. E. 304; *McDonald* v. *Illinois C. R. Co.* 88 Iowa, 345–350, 55 N. W. 102; *Illinois C. R. Co.* v. *Davidson,* 22 C. C. A. 306–309, 46 U. S. App. 300, 76 Fed. 517.

It is a matter of common knowledge that passengers on street cars frequently get off on one side as well as another, unless one way be obstructed by closed gates or doors; and the evidence showed that such practice had prevailed at the stopping place where plaintiff received her injuries. Charged with this knowledge, and knowing that the east side was unsafe, the defendant recognized its duty to its passengers, at that

point, in the strict rule that passengers were to be made to get off on the west side only, to which rule its conductor testified. This duty was not discharged by making such rule, merely, but extended to reasonable and effective means for its enforcement by barring the way or the giving of timely warning. As it is certain that there was no bar or closed gate on the east side of the car to prevent egress, and as the plaintiff's evidence tended to show that the western exit was obstructed by the motorman and his acquaintance, and that the motorman neither obstructed the eastern exit, nor warned plaintiff in time against using it, it was proper to submit the question of negligence to the jury, as was done in the instructions given on behalf of the plaintiff, the last one of which, however, related rather to the question of contributory negligence.

Two other refused instructions of the defendant, which furnished the grounds of the third and fourth assignments of error, require no separate consideration, for, as stated in appellant's brief, "the proposition involved in these prayers is a corrollary of the proposition involved in the second and third prayers; namely, that if a suitable and adequate platform had been provided on the west side, the appellee was bound to use that platform, provided she had knowledge that such platform was in existence, or could and would have known of its existence had she exercised ordinary care and prudence."

3. The fifth assignment of error is on the refusal of defendant's seventh special prayer that the jury be instructed, as a matter of law, that if they believed that plaintiff, in alighting from the east side of the car, saw, or ought to have seen, or by the exercise of ordinary care, could have seen, that there was no platform on that side, but only an open roadway some distance down, and notwithstanding attempted to alight, then she did so at her own risk, and the verdict should be for the defendant. There was no error in refusing this instruction. In the light of the evidence in behalf of the plaintiff, heretofore recited, it cannot be declared, as a matter of law, that she was guilty of contributory negligence. It was a question of fact for the determination of the jury. *Mosheuvel* v. *District of*

*Columbia,* 191 U. S. 247–265, 48 L. ed. 170–177, 24 Sup. Ct. Rep. 57; *Indiana Union Traction Co.* v. *Jacobs,* 167 Ind. 85–90, 78 N. E. 325; *Boyce* v. *Manhattan R. Co. supra; Missouri P. R. Co.* v. *Long,* 81 Tex. 253–257, 26 Am. St. Rep. 811, 16 S. W. 1016.

In submitting the question of contributory negligence the general charge covers the ground completely, and no exception was taken thereto.

4. The sixth, tenth, eleventh, and twelfth assignments of error relate to the admission of certain testimony as to the defective eyesight of the plaintiff, and the refusal of defendant's eighth special instruction founded thereon. That instruction is as follows: "8. The jury are instructed as a matter of law that, in considering whether or not the defendant in this case was guilty of negligence, they should eliminate entirely any evidence in this case tending to show that the plaintiff's eyesight was defective, or that she was near sighted; in other words, in considering the duty of the defendant in the premises, the plaintiff must be considered a normal person with normal eyesight, unless the jury find from the evidence that the defect in her eyesight, if any, was brought to the knowledge of the defendant or its agents."

As the exception taken to the evidence has been practically waived, it is sufficient to say that it showed that plaintiff was fifty-nine years old, was nearsighted and wore glasses. It does not appear that her sight was worse than that ordinarily of persons of her age, who being nearsighted, wear glasses to correct the defect.

It was not pretended that she was so nearly blind as to require a higher degree of care than other passengers, by a carrier having knowledge of the defect. A carrier must be presumed to know, however, that persons of all ages and conditions, strangers as well as those familiar with the surroundings, nearsighted people wearing glasses, as well as those of perfect sight, are frequently among its passengers, and it is required to provide appliances, ways, and means, adapted under the circumstances, to the safe transportation of all such persons. *Met-*

*ropolitan R. Co.* v. *Falvey*, 5 App. D. C. 176–180; *Illinois C. R. Co.* v. *Davidson*, 22 C. C. A. 306–309, 46 U. S. App. 300, 76 Fed. 517. This consideration, however, is unimportant, for, as we have said, the testimony was not introduced in support of a claim that defendant owed plaintiff, on the occasion in question, a higher degree of care than was due other passengers. No instruction to that end was asked by the plaintiff, or given by the court in the general charge. The evidence had relation to the question of the plaintiff's contributory negligence, which was the important issue in the case. In determining whether she exercised ordinary and reasonable care under all the circumstances, it was proper that the jury should be informed in respect of all the conditions surrounding her at the time. In the absence of any instruction on the point, it is conceivable, even, that they might have thought it her duty to exercise more care than would ordinarily be expected of one possessed of keener vision. We find no error in the refusal of the instruction asked by defendant.

5. The thirteenth assignment of error relates to the exception taken to the first special instruction given at plaintiff's request, which is as follows:

"The jury are instructed that it was the duty of the defendant company to exercise the highest degree of care and caution to provide a reasonably safe place at its regular stopping point or station at the south end of the aqueduct bridge for its passengers to alight from its cars; and that it was also the duty of the defendant company to exercise a like degree of care to provide a safe means of egress from its cars at said point, so that the passengers alighting from its cars at such a point or station would not alight in a dangerous or unsafe place; and if the jury find, from the evidence in the case, that the defendant company failed to exercise such care, and that such failure was the immediate and direct cause of the injury to the plaintiff, then their verdict should be for the plaintiff."

It is a well-settled rule of the law of carriers that they must, in respect of their passengers, exercise the highest degree of

reasonable care in providing safe means of transportation. *Stokes* v. *Saltonstall,* 13 Pet. 181–191, 10 L. ed. 115–121; *Indianapolis & St. L. R. Co.* v. *Horst,* 93 U. S. 291–295, 23 L. ed. 898, 899; *The City of Panama,* 101 U. S. 453–462, 25 L. ed. 1061–1064; *Gleeson* v. *Virginia Midland R. Co.* 140 U. S. 435–443, 35 L. ed. 458–463, 11 Sup. Ct. Rep. 859. And this rule, as heretofore stated, extends to means for the safe egress of passengers, under ordinary conditions. The rule was correctly applied in the instruction excepted to.

6. The sixteenth, and last, assignment of error is addressed to language of the court in the general charge, which, it is complained, instructed the jury that proof of the injury by plaintiff made a prima facie case of negligence, which shifted the burden of proof to the defendant. In the beginning of his charge the court stated the law relating to the burden of proof which is on the plaintiff in such cases, and then added the following: "Now the law goes a step further, and it says that where a plaintiff has been a passenger upon a railway cars, meaning of course street car likewise, and an accident happens to the plaintiff whilst being a passenger, that she meets the requirements of the law as to the weight of the testimony by showing that she was a passenger on the train, and that whilst such a passenger she was injured by the defendant company. Now the law says that, when that is done, the plaintiff has met the requirements of the law, and the burden then shifts or changes to the defendant to show that the accident did not happen by reason of the negligence of the defendant, or, if the defendant was negligent, still if the plaintiff was likewise negligent and the plaintiff's negligence contributed to her injury, then the law says that she would not be able to recover. So that in this case, whilst the burden is upon the plaintiff to show by a fair weight of the testimony that she was injured by the defendant company, that burden is met for a prima facie case by showing that she was injured whilst she was a passenger upon that train. Therefore, she has sustained the burden for a prima facie right of recovery, then it changes and the defendant company must then rebut that prima facie

case, by showing that it was not through their negligence, or, if they were negligent, that the plaintiff was also negligent, and that, the plaintiff's negligence having contributed to the injury, she would not be entitled to recover."

The jury were then charged that the burden of showing contributory negligence was on the defendant, and the law applicable thereto was given.

It is a settled rule of law that when an injury occurs to a passenger through some accident happening as the result of defective cars and appliances, or defective and obstructed tracks, or through derailments and collisions, or, in other words, accidents which in the usual and ordinary course of things would not happen with proper care, a prima facie case of negligence on the part of the carrier is made out by the proof of the injury. Negligence is inferred from the happening of the accident, and it is then incumbent upon the carrier, assumed to have information in respect of the cause that is inaccessible to the passenger, to furnish an explanation of the accident, consistent with its obligation to exercise the highest degree of care. The rule is founded in reason and sound public policy. *Stokes* v. *Saltonstall*, 13 Pet. 181–192, 10 L. ed. 115–122; *Gleeson* v. *Virginia Midland R. Co.* 140 U. S. 435, 35 L. ed. 458, 11 Sup. Ct. Rep. 859; *Inland & Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 551, 35 L. ed. 270, 11 Sup. Ct. Rep. 653; *City & Suburban R. Co.* v. *Svedborg*, 20 App. D. C. 543–549.

On the other hand, where the accident is not of the foregoing character, but one resulting from some unusual risk taken by the passenger, it has been said that the rule does not apply. *Weaver* v. *Baltimore & O. R. Co.* 3 App. D. C. 436–453; *Harbison* v. *Metropolitan R. Co.* 9 App. D. C. 60–69. In *Weaver's Case,* the passenger, a railway mail agent, protruded his head from the opening near the middle of the car in the course of securing a mail bag, and was killed with contact with the side post of a bridge over which the car was passing at the time. In *Harbison's Case,* the plaintiff was riding upon the foot board of a crowded summer car, and so protruded a portion of his body that it was struck by a car coming on the adjacent track.

It was held in each case that the mere fact of injury, under such circumstances, did not make a prima facie case; some other evidence of negligence was necessary. In another case it has been held that a prima facie case was made out where, the car having stopped to let off passengers, the plaintiff was thrown down by the sudden starting of the car as she was in the act of stepping off. *City & Suburban R. Co.* v. *Svedborg, supra.* See also *Kehan* v. *Washington R. & Electric Co.* 28 App. D. C. 108.

What was said in *Svedborg's Case* was not necessary to its determination, and the Supreme Court of the United States, in affirming the judgment, declined to discuss the point, because it said that, if the law was erroneously declared,—and this it neither affirmed or denied,—it could not have prejudiced the defendant. *City & Suburban R. Co.* v. *Svedborg,* 194 U. S. 201–204, 48 L. ed. 935–937, 24 Sup. Ct. Rep. 656. In that case, as in this, the material question was whether the plaintiff had been guilty of contributory negligence. The plaintiff in this case did not rest with proof of the injury merely, but assumed the proof of negligence as a necessary affirmative fact. She asked no instruction in regard to a prima facie case. Assuming her evidence to be true, as the jury found, there could be no other reasonable conclusion than that the defendant had failed to exercise proper care in obstructing the unsafe exit from the car. What the court said, in the extract above quoted, was, as was also the case in the Svedborg opinion, rather by way of introduction to the declaration that, as regards the contributory negligence of the plaintiff, the burden of proof was upon the defendant.

Afterward the court proceeded at length in the general charge, in the course of which it gave the several instructions asked by the plaintiff, in which no error has been found, and stated the law relating to contributory negligence in applicable and unobjectionable terms. We think it unnecessary to determine whether the statement in regard to a prima facie case, in application to the facts in this case, was erroneous or not.

Bearing in mind the evidence on both sides relating to the

question of the negligence in fact, of the defendant, and the final submission of that issue to the jury, we think, as did the Supreme Court in *Svedborg's Case,* that the error, if error it was, could not have worked prejudice to the defendant. As before suggested, the substantial question in the case was whether the accident was contributed to by the recklessness or want of ordinary care of the plaintiff.

For the reasons given, the judgment will be affirmed, with costs. *Affirmed.*

Mr. Justice VAN ORSDEL dissenting.