BYERS et al. v. SHELTON. (No. 11488.)*

(Court of Civil Appeals of Texas. Fort Worth. March 6, 1926. Rehearing Denied March 27, 1926.)

**1. Trover and conversion ⬥54.**

Evidence *held* to show that defendants had knowledge at time of conversion of plaintiff's mules and equipment that he was using team in course of his employment, thereby warranting special damages.

**2. Trover and conversion ⬥47—Computing as damages for conversion of team and equipment value of their use based on daily rate of what such property would have brought under contract of hire held proper.**

In suit for conversion of mules and equipment, computing as damages value of use of team and equipment based upon a daily rate of what such property would have brought under contract of hire *held* proper where plaintiff testified he would have used his property at all times while they were taken, and jury allowed recovery for 82 days of use, less Sundays and days for which team probably not used.

**3. Appeal and error ⬥1062(1)—Submission of issue as to market value of converted property on day of conversion held not prejudicial for failure to use terms "reasonable market value" and "reasonable cash market value"; "reasonable."**

Submission of issue as to what was "market value" of converted property on day of conversion *held* not prejudicial for failure to use terms "reasonable market value" and "reasonable cash market value," there being no material difference between such expressions, and "reasonable" being defined as comfortable to reason; rationally fitting.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable.]

**4. Trial ⬥352(1)—Issues held not erroneous as unduly emphasizing plaintiff's contention that transaction between him and defendant was that of a mortgage.**

Submission of issue whether transaction between plaintiff and defendant was a mortgage or conditional sale, and additional issue referring to same transaction, whether bill of sale executed by plaintiff to defendant was intended to secure money advanced by defendant to pay amount due mortgagee on note and mortgage, *held* not erroneous as unduly emphasizing contention of plaintiff that transaction between him and defendant was a mortgage.

**5. Appeal and error ⬥882(14).**

Litigant cannot complain of an issue submitted at his request.

**6. Trial ⬥350(3)—Submission of issue whether mortgagee knew that defendant loaned money to mortgagor to take up mortgage and note then held by mortgagee held proper under evidence.**

In mortgagor's action for conversion of mortgaged property by mortgagee and another, submission of issue of whether mortgagee knew that money advanced by defendant to mortgagor to take up note and mortgage then held by mortgagee was intended by defendant and mortgagor as a loan *held* proper under evidence.

Appeal from Young County Court; W. F. Parsley, Judge.

Action by R. B. Shelton against William Byers and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Marshall & King, of Graham, for appellants.

W. T. Daniel and L. C. Counts, both of Olney, for appellee.

BUCK, J. R. B. Shelton purchased from Johnnie Wilson, Jr., two mules, a wagon, and a set of double harness for $450, payable in weekly installments of $25. He sued Wilson and William Byers for conversion. He alleged that up to January 12, 1925, he had paid nine weekly installments, or a total of $225; that on said date he was sick in bed, and sent his son to Wilson with instructions to tell Wilson that he would pay said installment on January 13th, and to ask Wilson if it would be all right to do so; that Wilson told plaintiff's son that it would be all right to postpone the payment; that on the next day he went to Wilson and tendered the payment to him, but Wilson informed him that it was too late, and that he (Wilson) had placed the note and chattel mortgage in the hands of an attorney for collection, and that plaintiff would have to pay the balance due on said note, together with 10 per cent. as attorney's fees; that plaintiff then went to said attorney, who informed him that such was the case, and that he had already prepared the petition to file for the foreclosure of the lien against said property; that on the afternoon of January 13th, or the next day thereafter, William Byers told the plaintiff that he (Byers) would advance to plaintiff the sum of $254 with which to pay the note of Wilson, and would give the plaintiff 20 days in which to repay the money so advanced; that he went to the office of the defendant Wilson's attorney and paid the note with the money he had borrowed from Byers; that in borrowing the money he gave Byers a bill of sale to said property, reciting a consideration of $254.50, with the distinct agreement and understanding that the property was to be held by said Byers as security for said money, and that plaintiff could repay the same at any time within the 20 days; that plaintiff still retained the title and possession of said prop-

erty; that on January 17, 1925, the defendants Wilson and Byers came to plaintiff's house, while he was sick in bed, and took the mules and harness and carried them away, without the consent of plaintiff; that on January 20th plaintiff went to Byers and tendered him the money borrowed, together with interest for the time it had run, but that Byers informed plaintiff that he could not deliver said property to him for the reason that he had already sold it to defendant Wilson.

Plaintiff further alleged that the mules, at the time they were taken by defendants and converted to their own use, were of the value to him of $5 a day, and that he could and would have used them and could have made at all times since said conversion a profit of $5 a day. He alleged that he sued for title and possession of the above-described property, and pleaded a tender to the defendant Byers of the sum of $256.50, being the sum so advanced by Byers. Presumably the extra $2 was interest. He alleged that the acts of defendants, as hereinabove alleged, were willful, malicious, and unlawful, and were done for the purpose of injuring and defrauding plaintiff, and did so injure and defraud him, and he pleaded for exemplary damages. He also pleaded the value of the use of said mules at $5 a day.

The defendants filed their answer and pleaded a general demurrer and a general denial. They further pleaded that the transaction between plaintiff and defendant Byers was a bona fide sale, and was not intended by either party to be anything else. That defendant Byers informed the plaintiff at the time of such negotiations that he was not a money lender, but was a buyer and hirer of mules, stock, and equipment, and that he would take the stock as a purchase, and, if plaintiff did not desire to sell, the deal was at an end.

The court submitted the cause upon special issues, and instructed the jury that they were the exclusive judges of the facts proven and the weight of the evidence, and the burden was upon plaintiff to prove the facts alleged in his petition, and unless they should find that he had done so they would answer such special issues against the plaintiff. He further defined a mortgage and a conditional sale. The following issues were submitted to the jury, and answers to the same as indicated:

"(1) Was the transaction between the plaintiff, R. B. Shelton, and defendant Byers a mortgage or a conditional sale? A. Mortgage.

"(2) What was the market value of the property in question in this case on the 17th day of January, 1925? A. $425.

"(3) What was the value of the hire or use of said property per day from and after January 17, 1925? A. $4 per day.

"(4) Was the bill of sale, executed by the plaintiff on the 14th day of January, 1925, to defendant Wm. Byers intended to secure to the defendant Wm. Byers the payment of the money advanced by Byers to pay the amount due to the defendant Johnnie Wilson on the note and mortgage in question in this case held by said Wilson? A. Yes.

"(5) Was the property in this case taken from the possession of the plaintiff by the defendant Wm. Byers on the 17th day of January, 1925, without the consent of the plaintiff? A. Yes.

"(6) On the 14th day of January, 1925, did the defendant Johnnie Wilson know that the money advanced by the defendant Byers to take up the note and mortgage debt then held by the defendant Wilson was intended by the parties, Byers and Shelton, as a loan? A. Yes.

"(7) Was there an agreement between the plaintiff and the defendant Byers on or about the 14th day of January, 1925, as to the length of time, if any, in which the plaintiff should repay to the defendant Byers the money advanced by defendant Byers to pay the defendant Wilson's debt, and, if you say there was such an agreement, then you are further asked to find and state how many days the said plaintiff was to have to repay the said money? A. Yes, and 20 days."

Upon this verdict, the court rendered judgment for plaintiff for the recovery of the mules, harness, and wagon as against defendants Byers and Wilson jointly and severally. And in the event said property could not be returned by the defendants, it was ordered and decreed that plaintiff recover of and from the defendants jointly and severally the sum of $425. The judgment further awarded plaintiff against both defendants a decree for $328, the value of the use of the property for 82 days, less the sum of $255.10, the amount due defendant Byers upon the loan made by him to plaintiff. The defendants have appealed.

The first proposition is that an agreement by the owner and holder of the promissory note to extend its due date for a few days, or for any length of time, is not a binding obligation unless supported by a consideration. This allegation was made with reference to an alleged transaction between plaintiff and defendant Wilson, but the plaintiff further pleaded that he paid Wilson, and the uncontradicted evidence supports that allegation. Hence the question presented becomes immaterial.

[1] The second proposition is that special damages are not recoverable unless specially pleaded and shown by the evidence that defendant had notice of such damages. We think the circumstances tend to show that both defendants had knowledge at the time of the transactions hereinabove pleaded by plaintiff that he was using the team in the course of his employment. In addition to the fact that the evidence tended to show that both defendants were well acquainted with plaintiff at the time of the alleged conversion of the property, and that plaintiff bought the team from Wilson, plaintiff testified that the next day after he had seen Byers he went

to defendant Wilson's office and talked to him, and that Wilson asked him where he was going to get the money, and he told him that Byers was going to let him have it for 20 days; that he then proposed that they both go to the office of the attorney who had the note and mortgage for Wilson, but that Wilson said for plaintiff to wait a while and then went off; that later in the day Byers sent for him and told him that Wilson had informed him that a laborer's lien was going to be run on the mules and wagon, and told him the name of the person who was going to do so; that he later brought the man to Byers, and the man told Byers that there was not a word of truth in the statement. Evidently this man was one who had been driving the team for plaintiff, and, if so, both Wilson and Byers knew that plaintiff was using the team and probably the wagon for hire. If in fact defendants had notice that plaintiff was using the team for profit, and we can see no other reason why a man should want to own and keep a team of mules, then the defendants had knowledge of the loss to plaintiff by the wrongful conversion of the team. Hence, we think the assignment should be overruled.

The fourth proposition is that it is improper to compute as damages the value of the use of the team, wagon, and harness, based upon a daily rate of what said property would have brought under contract of hire. In support of this proposition appellants cite Hudson v. Wilkinson, 45 Tex. 445; Hull v. Davidson, 25 S. W. 1047, 6 Tex. Civ. App. 588; Railey v. Hopkins, 110 S. W. 779, 50 Tex. Civ. App. 600; Brookmole v. Kinchen (Tex. Civ. App.) 253 S. W. 953. In Hudson v. Wilkinson, supra, it is said, quoting from the headnote:

"Held, that to prove the value of the use per day, and compute for a long period, is an improper mode of ascertaining the value of the hire of a wagon and team, in a suit for damage for its conversion."

In Railey v. Hopkins, supra, it was held that the value of the use and hire of the animals wrongfully levied on under execution and detained for 2½ years should not be estimated by the day or month.

In Brookmole v. Kinchen, supra, it was held that an award of $1,250 damages for the use of one replevied Ford car for 228 days during 1921, based on testimony that the rental value of such car was $10 to $15 per day, was excessive.

[2] All of these cases, and others, lay down the rule that, where the owner of property is deprived of its use for a long time, he cannot recover in damages the value of its use based on daily, weekly, or monthly hire. The reason for the rule is that during the long period there will be many days in which, on account of the weather or for other reasons, the property cannot be used, and that to entitle the plaintiff to recover damages for the

use thereof, based on a fixed value for its daily use, would entitle him to recover more than equity would allow him, and in many cases more than the total value of the property. But we do not think the rule applies in this case. Plaintiff testified that he "could and would have used said property at all times since they were taken." The evidence shows that the property was taken on January 17, 1925. The trial was had on April 25, 1925. Thus there were 97 days from the time of the conversion until the trial. In allowing a recovery for 82 days of use, the jury evidently did not allow for Sundays, and deducted an additional amount for days in which the team probably was not used. This proposition is overruled.

The court submitted to the jury an issue as to what was the value of the hire or use of said property per day,.and as to what was the market value of the property in question on the 17th day of January, 1925. The defendants objected to the use of the term "market value," and insisted then and now insist that the court should have instructed the jury to find the "reasonable market value," and the "reasonable cash market value." Only one witness testified as to the value of the use of the team. The plaintiff testified:

"At the time the mules and other property were taken from me the mules were earning the net sum of at least $5 per day, and the reasonable hire was $5 per day. I could and would have used said property at all times since they were taken."

In Gallamore v. City of Olympia, 75 P. 978, 34 Wash. 379, the Supreme Court of Washington held that there was no distinction between such phrases as "reasonable right to suffer" and "right to suffer" used in various cases in stating the rule how prospective damages are recoverable. In Sedgwick on Damages (8th Ed.) vol. 1, p. 249, the author, speaking on prospective losses, after stating the rule to be that such losses must be reasonably certain to ensue, uses this language:

"This 'reasonable certainty' does not mean absolute certainty, but 'reasonable probability,' citing Griswold v. N. Y. C. & H. R. R. R. Co., 21 N. E. 726, 115 N. Y. 61, 12 Am. St. Rep. 775, and Feeney v. L. I. R. Co., 22 N. E. 402, 116 N. Y. 375, 5 L. R. A. 544, where it was held not error to permit answers to questions put to an expert medical witness concerning the probability of the injured party suffering in the future from his injuries. In Hamilton v. Green Falls S. R. Co., 42 P. 860, 43 P. 713, 17 Mont. 334, the court said: 'The court charged, among other things, that damages could be awarded for "such consequences as are reasonably likely to ensue in the future;" and again, "plaintiff may recover for all pain and suffering which she has sustained, or in reasonable probability will hereafter sustain," etc.' "

[3] In Scott Township v. Montgomery, 95 Pa. 444; Ill. Cent. R. Co. v. Davidson, 76 F. 517, 22 C. C. A. 306, the court held that it was

not error for the trial court to instruct the jury that the injured person might be allowed damages for such pain and suffering as he was "likely to suffer" in the future by reason of his injuries. We think the authorities cited, as well as others that might be cited, sustain the conclusion that there is no material difference in the expressions of "reasonable market value" and "market value." The term "reasonable" is defined by Mr. Webster as "conformable to reason; rationally fitting." We think under the circumstances no injury was done to appellants by reason of the charge given.

[4, 5] In special issue No. 1 the court submitted the issue to the jury:

"Was the transaction between the plaintiff R. B. Shelton and defendant Byers a mortgage or a conditional sale?"

And issue No. 5 was submitted:

"Was the bill of sale, executed by the plaintiff on the 14th day of January, 1925, to defendant Wm. Byers, intended to secure to the defendant Wm. Byers the payment of the money advanced by Byers to pay the amount due to the defendant Johnnie Wilson, on the note and mortgage in question in this case held by said Wilson?"

The question submitted in issue No. 1 was really a question of law, while the question submitted in issue No. 5 was a question of fact, which being answered by the jury would enable the court to determine whether in fact the transaction and the written evidence thereof between the plaintiff and the defendant Byers should be construed by the court as a conditional sale or a mortgage. While apparently the submission of issue No. 1 was not necessary, yet we do not think that the submission of the two issues unduly emphasized the contention of the plaintiff. Issue No. 1 was given at the request of the defendants, and we do not think that they are in a position to complain that the issue was submitted. However, they complain rather of the submission of issue No. 5, but, as before said, we do not think there was error in this.

[6] Complaint is made of the action of the trial court in submitting issue No. 7, to wit:

"On the 14th day of January, 1925, did the defendant Wilson know that the money advanced by the defendant Byers to take up the note and mortgage debt then held by the defendant Wilson was intended by the parties, Byers and Shelton, as a loan?"

Appellants object to this on the ground that there was no testimony in the record that showed defendant Wilson had constructive notice of any mortgage relations between the plaintiff and defendant Byers at any time, and because such issue is prejudicial and assumes that there was some testimony for such an issue. The plaintiff testified that he and his son called upon defendant Wilson after they had talked to Byers and told Wilson that Byers was going to let him have the money for 20 days. If he was borrowing the money, then it became a question of fact as to whether the bill of sale given was intended as a mortgage or not, and we think the evidence supports the conclusion of the jury that Wilson knew before he and Byers went out to plaintiff's farm and got the mules and later Wilson bought the mules from Byers that the agreement between plaintiff and Byers was that Byers had loaned the money to plaintiff to take up the note.

We have carefully examined the other assignments and propositions of appellants, and conclude that all assignments should be overruled, and the judgment affirmed; and it is so ordered.