**STALKER v. WILLIAMS.  (No. 392.)**

Court of Civil Appeals of Texas.  Eastland.
Feb. 3, 1928.

Rehearing Denied March 16, 1928.

1. **Trial ⬯350(3)—Submission of issue as to damages sustained by loss of use of drilling tools held erroneous, as without support in evidence and not pleaded.**

In suit for possession of oil well drilling tools and for reasonable rental value for use thereof against one whose possession was in good faith, submission of issue as to compensation to plaintiff for damages sustained by reason of being deprived of use of tools *held* erroneous, as without sufficient support in evidence and being a measure of damages not pleaded.

2. **Trover and conversion ⬯44—Measure of damages for detention of personal property is generally value of use during period of detention.**

Measure of damages for detention of personal property in good faith is as general rule the value of its use during the period of detention, though recovery should bear a just proportion to value of property detained as well as period of time through which detained.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Suit by L. T. Williams against C. E. Stalker, wherein one Goodwin and another were made defendants.  Judgment for plaintiff against defendant named, and defendant named appeals.  Reversed and remanded.

Butts & Wright, of Cisco, for appellant.

G. O. Bateman, of Breckenridge, for appellee.

LESLIE, J.  This is a suit in which L. T. Williams sued C. E. Stalker for the title and possession of a string of oil well drilling tools and for the reasonable rental value of the use thereof, and, in the alternative, for the market value of the tools at the time of conversion and also "for the reasonable rental value for the use and hire thereof"; such value alleged to be $25 per day during the time of detention.

Stalker's possession of the tools was in good faith.  In acquiring them, he took a bill of sale from W. C. Wade, who purported to be the owner thereof, disposing of them through brokers, Goodwin & White.  Stalker made Goodwin & White defendants, alleging that he purchased the string of tools from them, and prayed for a judgment against them in event judgment went against him.  There now appears to be no controversy about Williams' ownership of the tools and that they were sold without his knowledge or consent. His right of recovery of the possession of the tools is not in question.

The cause was submitted to the jury on special issues, in answer to which the jury found:  (1) That $1,500 would compensate the said L. T. Williams for damages he has sustained by reason of being deprived of the use of said tools since January 3d to the date of the judgment;  (2) that $2,000 was the reasonable cash market value of the tools at Breckenridge at the time they were taken into possession by Stalker;  (3) that Goodwin & White did not sell the tools to Stalker;  (4) that Goodwin & White did not represent to Stalker that they were the owners of the tools;  and (5) that Stalker did not rely upon such representations.

Upon these answers, judgment was rendered in favor of Williams for the possession of the tools and damages in the sum of $1,500, and, in the alternative, the court decreed the market value of the tools to be $2,000, and that, upon the failure of the defendants to deliver Williams the possession thereof, he then recovered of Stalker the value of the tools and damages in the sum of $1,500.  Williams apparently elected to repossess the tools and claims the damages recovered.  Judgment also went in favor of Goodwin & White.

The judgment of the court is attacked by various assignments in which complaint is made that there was no evidence that the plaintiff, Williams, had sustained any damage by reason of the loss of the use of said tools, and that the answer by the jury to issue No. 1 did not furnish the correct measure of damages for the conversion of the tools, and, further, that the answer to the issue is not supported by any evidence and is in conflict with the great preponderance of the evidence introduced on the trial.

The first special issue was:

"What amount of money, if paid now, would compensate the said L. T. Williams for damages he has sustained, if any, by reason of being deprived of the use of said tools from January 3d to date?  Answer as you find the facts to be.  Answer: $1,500."

It will be observed that this $1,500 damages was awarded Williams "by reason of his being deprived of the use of said tools." It becomes necessary to examine the testimony in that respect.  His testimony should be controlling.  It is in part as follows:

"When I left here I owned some oil well drilling tools; they were piled on the Humble lease at Black Camp. * * * When I returned, the tools were gone. * *, * I found part of the tools 24 miles from Albany. * * * Mr. C. E. Stalker had charge of the tools and was using them at the time. * * * They were drilling with the tools when I located them, drilling an oil well. * * * Mr. Stalker has never surrendered possession of these tools to me. * * * When I returned to Breckenridge the 28th of December, I wanted the tools; I figured on seeing if I could locate some contracts to drill.  I am a drilling contractor by profession. * * * If I had gotten possession of them, possibly I could have gotten some con-

tracts. * * * I am familiar with what the rental value was. This list of tools would be a completed string less the cables, boiler, and engine, the generator, and bullropes. With these exceptions they would be considered a complete string of tools. I know what would be a reasonable rental of the tools of like grade, kind, and amount. * * * It would be $25 per day. * * * If I had had possession of the tools, I would have made an attempt to obtain work for them. As to what prevented me from obtaining contracts, I did not have my tools to work with. * * * I have not rented any part of the tools I had left, and have not rented them because I have not had an opportunity to rent them, I have not drilled a well by contract with these tools I have left since I came back; as to why I have not, my tools were all scattered. They were not scattered when I left. * * * I had enough tools left to drill a well. I made some inquiry about getting drilling contracts here, and, if I had gotten a contract, I had enough tools to drill with if I had the money to drill it with. I have not taken a drilling contract with anybody since I came back. You ask why I did not, and I answer I intended getting some money on my tools, if they had been together, to start. I mean I was going to mortgage the tools, but they were not in shape so I could do it. * * * When I stated a while ago I did not get out and try and get a contract because the tools were not in shape, I meant they were not together so I could come in and get a mortgage on them and get some money. I expect I have a complete string of tools left, with the tools at Breckenridge Fishing Tool Company, besides those Mr. Stalker has. I guess these tools had been stacked on the Black lease about three years."

[1] As we interpret appellee Williams' testimony, he has not lost anything "by reason of his being deprived of the use of said tools," and the assignment above referred to, addressed to the submission of issue No. 1, must be sustained, since that issue, as submitted, called for a verdict for damages not supported by the testimony. Eastern Texas Electric Co. v. Baker et al. (Tex. Com. App.) 254 S. W. 933.

[2] There was pertinent testimony as to the rental value of the tools, and under such circumstances the measure of damages for the detention of personal property is, as a general rule, the value of its use during the period of detention. As bearing upon this subject, the rental value of the property is properly considered. 17 C. J. p. 878, § 184.

However, in measuring the recovery for the use and rental value in such cases, recovery should bear a just proportion to the value of the property detained, as well as the period of time through which detained. In other words, fair and equitable compensation is due the rightful owner of the property, while at the same time the wrongdoer should not be permitted to profit by his wrong. These are the controlling principles underlying a recovery in this class of cases. Montgomery v. Gallas (Tex. Civ. App.) 225 S. W. 557; By-

ers v. Shelton (Tex. Civ. App.) 282 S. W. 637, and the authorities cited in those cases.

It will not be necessary to notice other contentions raised by the appellant, as they will probably not arise upon another trial.

For the reasons assigned, the judgment of the trial court, in the respect appealed from, will be reversed, and the cause remanded.

### On Rehearing.

The original opinion was devoted largely to the insufficiency of the evidence to support the issue of damages as submitted by the court to the jury. By that it was not meant to hold that the correct measure of damages was submitted to the jury, but, on the contrary, we think the measure of damages as submitted was different to the one pleaded and proved. Appellee pleaded as his measure of damages the reasonable rental value of the tools during the period of detention. His proof followed in the main his allegation, but the issue submitted by the court to the jury was not the reasonable rental value but the damages suffered by appellee by reason of being deprived of the use of the tools during that period. We think that that measure of damage not only was without sufficient support in the evidence, as pointed out in the original opinion, but also that it was a measure of damage which was not pleaded.

The motion for rehearing has been duly considered, and will be overruled.